Pearson, C. J.
 

 I concur in the conclusion that the [defendants are liable to judgment tor the money on motion, but I am of opinion also that the money was received “ by virtue of his office,” and that the defendant Haywood and his sureties might have been subjected by suit on his official bond.
 

 The slaves were sold for the purpose of partition, and the object of directing the clerk to sell on six months’ credit, taking bond and security with interest from date, was not to make
 
 an
 
 investment, but to enhance the price, by enabling those who did not have the cash in hand to become bidders, so as not to confine the bidding to those who had the cash.
 

 The Clerk and Master made the sale according to his order, on six months’ credit. When asked if those who had the cash but were not in a condition to give bond with security, were at liberty to bid, he told them that as a matter of course, their bids would be accepted. Suppose he had refused to take such bids; evidently the number of bidders would have been diminished, and the purpose of enhancing the price would have been defeated. So, it seems to me that he put the .prpperi construction upon his order to sell. He thought so,
 
 *386
 
 for his report set out that certain bidders paid cash. Had he refused cash bidders, he would have been amenable to the charge of “sticking in the bark,” to the prejudice of those for whom he was acting, just as much as if he had made a cash sale, and thereby excluded from bidding all who were not prepared with thejmoney; for it was known, many negro-traders were prepared to pay cash, but could not give security; and the order was shaped so as, by its proper construction, to include both classes of bidders. I think, therefore, that in making the sale on six months’ credit, with the understanding that all who chose might pay the cash instead of giving bond and security, and also in receiving the money, the clerk acted in conformity with his-order, and received the money by virtue of his office, and his
 
 default
 
 was in not paying it over when it was called for.
 

 For what reason has the sale to be made on six months credit, taking bond and security with interest from date, and why should the Clerk and Master be held to the letter, and not be allowed to exercise his judgment as to the true construction of the order of sale ? Was it because he was considered unfit to be trusted with the money? No! For his official bond secured that. Was it for the sake of making $30 interest on $1,000? No! For an investment of the fund was not in contemplation of the court.- So the object was to enhance the prices by increasing the number of bidders. That was best promoted by letting in cash bidders as well as credit bidders, which more than compensated for a loss of $30 interest, to say nothing of the delay and expense of collection. Thus the gravamen is, that in this instance-the funds have been misapplied. But for that, it would have been “ all right.” I think the case is like that of an executor or administrator who sells on six months’ credit, as required by the statute, but allows some bidders to pay cash-
 

 I am also of opinion that when a clerk takes a bond payable say six months after date, if the debtor tenders the
 
 *387
 
 money at the day, the clerk is bound by the contract to receive it, and is not required to wait for an “ order of collection.” In other words, an order to collect is necessary, not to give the clerk authority to receive the money when a bond falls due, but to
 
 instruct Mm to bring suit
 
 on the bond, and compel payment. Consequently all such payments are received by him
 
 virtute officii,
 
 and accountability is secured by his official bond.
 

 Per Curiam. There is no error.